J-A09023-26

2026 PA Super 123

| | | |
|---|---|---|
| RICHARD LUFFY | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LARISSA ZELI | : | |
| | : | |
| Appellant | : | No. 1476 WDA 2025 |

Appeal from the Order Entered November 7, 2025
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-21-002683

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

OPINION BY McLAUGHLIN, J.: **FILED: June 15, 2026**

Larissa Zeli ("Mother") appeals from the custody order granting Richard Luffy ("Father") supervised physical custody of their child ("Child") with nonprofessional supervision. Mother argues the court failed to conform to the requirements of 23 Pa.C.S.A. § 5323(e.1). We vacate and remand for further proceedings.

Beginning shortly after Child's birth in 2021, Child's custody was controlled by Protection from Abuse Act[1] orders against Father. Father filed a complaint in custody in 2023, seeking partial physical custody of Child. The parties appeared for a series of hearings before a hearing officer, between 2023 and 2025.

During this time, pursuant to a consent order, Father began a 12-week mentoring program at Arsenal Family and Children's Center ("Arsenal"). In

---

[1] 23 Pa.C.S.A. §§ 6101-6122.

May 2024, the court ordered Father to enroll in a supervised weekly parenting program at Arsenal. He was allowed to schedule additional supervised custody time with Child through Happy Child Supervision ("Happy Child"), or another third-party adult as agreed to by the parties, for up to two hours per week. Father was responsible for the costs of supervision.

At a December 2024 hearing before the hearing officer, Father's probation/parole officer testified regarding Father's criminal history. He stated that Father has been compliant with his supervision requirements following his release from prison. **See generally** N.T., 12/12/24, at 13-40.[2]

Father's mother ("Paternal Grandmother") testified that she would have "no problem" supervising Father's visits with Child, if the court were to permit it. *Id.* at 48. She stated she has no history of child abuse or criminal offenses. *Id.* at 49. She also stated she "would never jeopardize the safety of [Child]." *Id.* at 79. On cross-examination, she conceded that in September 2021, she told Mother she would "never, ever deny [Father] access to [her] house, especially when [Child's] here." *Id.* at 58-59. Based on Father's progress with treatment, Paternal Grandmother also stated, "I don't think there is a need for supervised custody arrangements. I don't think there is a need, but I'd be happy to do it." *Id.* at 78. However, she testified that if Father relapsed with his mental health, drug, or alcohol treatment, "he would not be part of the

---

[2] The court entered an interim order in December 2024, allowing Father additional periods of supervised visitation during the year-end holidays.

family," and that there is a limit where she would deny Father access to Child. *Id.* at 66, 79-80.

At a later hearing before the hearing officer, in January 2025, an Arsenal employee testified that Father attends a two-hour session each week, and that the cost is $65 per session. N.T., 1/23/25, at 44, 74. She stated some clients "qualify for a lower fee based on income," but that Father had not requested financial assistance. *Id.* at 74.

Father testified at a hearing in February 2025 that he had been visiting Child at Arsenal "almost every Saturday" for approximately a year and had supplemented with Happy Child three or four times. N.T., 2/28/25, at 16, 20. He stated he did not use Happy Child more often due to the cost and he was "just coming back from being laid off." *Id.* at 16, 22. Father testified that he worked full time at Luffy Masonry. *Id.* at 110-11. When asked if he would use Happy Child as a supervisor "if the [c]ourt were to allocate the cost of Happy Child 50-50," Father answered, "Sure. I think if there was shared [sic], to help defray the costs." *Id.* at 22.[3]

At a May 2025 hearing, the hearing officer stated that Happy Child charges approximately $50 an hour, and a visit would cost around $150 or "a few hundred bucks." N.T., 5/1/24, at 57. The hearing officer asked whether

_____

[3] The court entered an interim order in April 2024, allowing Father to "continue to have supervised physical custody on a weekly basis for periods of up to 4 hours, supervision to be provided by Happy Child Supervision or other agree[d] upon Supervisor. Father shall be solely responsible for the costs of the supervised custody periods and any reports." Order, 4/2/25, at ¶ 4.

Father had "the ability" to pay for half. *Id.* Father responded, "Financially, I'm pretty strapped, I'm still trying to get fully back on my feet. And financially it is a struggle for me right now. $55 is still $55. It doesn't get me very far." *Id.* at 57-58.

A final hearing before the hearing officer took place in July 2025. Dr. Beth Bliss testified "as an expert in forensic psychology, clinical psychology, psychology with a specialization in children or adolescents, as a custody evaluator[.]" N.T., 7/18/25, at 13. She stated that she had performed a risk assessment of Father. She said Father is "considered to be in the low-risk range to engage in future violence" which is the lowest level of risk. *Id.* at 30; *see also id.* at 36. She noted Father's only criminal history arose in the context of his relationship with Mother. She added that he had completed alcohol treatment and a batterers' intervention program, did not have "any major mental health concerns," had maintained stable employment, and had denied having a history of trauma or adverse childhood experiences. *Id.* at 30-31.

However, Dr. Bliss stated Father "appears to lack insight into the concerns, has been seemingly unresponsive to treatment by continuing to deny his involvement in the abuse or minimizing the seriousness of it." *Id.* at 31. She recommended that Father's visits "still continue to either be supervised or unsupervised in the community, in a public setting." *Id.* at 40. She recommended the public-setting visits work toward visits at Father's house, supervised by a family member, "and then working toward eventually

unsupervised." *Id.* at 41. She suggested each step in the process of increasing Father's custody take approximately a month. *Id.* at 42-47; 140-41.

The custody hearing officer submitted a report and recommendation and a proposed custody order. The report stated that "[t]he need for supervised physical [custody] was not disputed[.]" Hearing Officer's Report and Recommendation, 7/25/25, at 2. It stated that the risk of abuse in the case "remains ongoing, and the presumption of the need for supervised physical custody has not yet been rebutted." *Id.* The officer recounted, "Father acknowledges being physically violent with Mother at relevant times. Father pleaded guilty to several violent and other concerning crimes including strangulation, assault, terroristic threats, endangering the welfare of a child, burglary and robbery. Mother and [C]hild were among the victims of this behavior exhibited by Father." *Id.* at 3. The hearing officer also found it to be "of significant import that Dr. Bliss was concerned Father appeared to lack remorse, and that he seemed to minimize or justify his violent and assaultive conduct despite the severity of the harm he inflicted." *Id.* at 6. The report stated that "[a]lthough Father was evaluated as a lower risk, Dr. Bliss reported that additional time was needed to see an adequate decrease in the risk being evaluated." *Id.*[4]

_____

[4] The report similarly stated, "Father has acknowledged endangering the physical and emotional welfare of the child at relevant times. Father continues to be at some risk to engage in future physical violence, and there is still a risk that the child could be impacted emotionally and be traumatized should this occur." Report at 3.

The hearing officer found, "Although supervision is somewhat cost prohibitive for Father, a non-professional supervisor capable of promoting the safety of the child has not been identified in [c]ourt and executed an affidavit of accountability." *Id.* at 2. The officer thus recommended Father be granted four hours per week of professional supervised custody through Happy Child, and an additional four hours per month through Arsenal, with the costs divided evenly between the parties.

The court adopted the officer's proposed order. The second paragraph of the order addressed professional supervision of Father's visits, and the cost-sharing between the parties:

> 2. Due to the criminal conviction history of Father, together with the history of abuse to the child and Mother perpetrated by Father, Father shall continue to exercise professionally supervised physical custody. Father shall have supervised physical custody one time per week for a period of up to four hours with Happy Child Supervision or other professional supervisor agreed upon by the parties. Father shall also have supervised physical custody at Arsenal Children and Family Center or with another professional supervisor agreed upon by the parties for up to four additional supervised custody periods of up to four hours each month. . . . The parties shall equally share in the cost of professional supervisor sessions. Father shall make full payment to the professional supervisor, Father shall request reimbursement from Mother (or credit towards arrears on any support case), and Mother shall reimburse Father for one-half of the cost within ten days.

Order, 7/24/25, at ¶ 2.

Father filed three exceptions, claiming: (1) the hearing officer did not analyze the risk of ongoing harm to Child; (2) the hearing officer failed to consider the expert's testimony that Father was low-risk; and (3) the

professional supervision was cost-prohibitive, "making it impossible for [Father] to exercise the court[-]ordered supervised time." Exceptions, 8/13/25, at 1.

Following argument in October 2025, the court overruled Father's first two exceptions but sustained the third. It entered an order modifying the second paragraph of the custody order to remove the requirement for professional supervision. The revised order instead allowed Father's custody to be supervised "by a competent adult individual who first completes and verifies an Acknowledgement of Accountability of Supervisor[5] and who successfully completes a criminal background check." Order, 10/15/25, at ¶ C. The order provided that "[u]ntil those requirements are met, Father's periods of custody shall remain supervised by a professional supervisor." *Id.*

In its Rule 1925(a) opinion, the court explained there were no issues with Father's behavior during visitation at Arsenal or Happy Child. Trial Court Opinion, 12/11/25, at 4 (unpaginated). The court noted that Dr. Bliss placed Father in a low-risk category and testified that Father has been compliant with his mental health treatment. *Id.* The court also observed that Father's probation officer testified that Father was fully compliant with the requirements of his probation. *Id.* The court observed that Father had paid

---

[5] Although 23 Pa.C.S.A. § 5323(e.1)(2) requires an "affidavit of accountability" (*see* below), Allegheny County has promulgated a form that bears the title, "Acknowledgement of Accountability of Supervisor." *See* Allegheny County Family Division Form I-33, *available at* https://www.alleghenycourts.us/wp-content/uploads/2024/09/Affidavit-of-Accountability-of-Non-Professional-Supervisor-8.2024-2.pdf.

for the Arsenal visits for the preceding 18 months. *Id.* It found that "the additional costs of expanded Happy Child supervision would create a substantial financial burden that would operate as an impediment to his already limited periods of supervised custody." *Id.* The court also pointed out that Paternal Grandmother "appeared on the record before the Hearing Officer and offered uncontroverted testimony that she had raised children and grandchildren, and that she has no criminal record nor has exhibited any conduct that would operate contrary to the safety and well-being of the minor child." *Id.*

Mother appealed. Father thereafter filed in the trial court an Acknowledgment of Accountability of Supervisor executed by Paternal Grandmother, as well as a Pennsylvania State Police Response for Criminal Background Check for her.

Mother presents the following questions:

1. Whether the trial court legally erred and thus abused its discretion by granting nonprofessional supervised physical custody without first designating a qualified adult supervisor. *See* 23 Pa.C.S. § 5323(e.1).

2. Whether the trial court legally erred by granting nonprofessional supervised physical custody when no individual executed an affidavit of accountability and the court made no finding that a potential nonprofessional supervisor is capable of promoting the safety of the child. *See* 23 Pa.C.S. § 5323(e.1)(2).

3. Whether the trial court legally erred by granting nonprofessional supervised physical custody conditional on a process to qualify nonprofessional supervisors that plainly omits the statute's requirements that the person appear in person before the court and the court find the individual is capable of promoting the safety of the child. *See* 23 Pa.C.S. § 5323(e.1)(2).

- 8 -

4. Whether the trial court legally erred by granting nonprofessional supervised physical custody without first making a finding on the record that Father is unable to pay for the professional supervised physical custody. *See* 23 Pa.C.S. § 5323(e.1).

5. Whether the trial court made an unreasonable determination, and thus abused its discretion, to the extent it concluded that Father is unable to pay despite record evidence demonstrating otherwise. *See* 23 Pa.C.S. § 5323(e.1)(1).

6. Whether the trial [court] legally erred when it departed from the statute's direction that the court "favor" professional supervised physical custody, despite record evidence of Father's past criminal history, current criminal no-contact order, and ongoing risk to Child. *See* 23 Pa.C.S. §§ 5323(e)-(e.1), 5328, 5329.

Mother's Br. at 6-7.

Mother's brief to this Court violates the Rules of Appellate Procedure in two ways. First, her Statement of the Case improperly includes a lengthy discussion of Mother's views of the history, purpose, and effect of Kayden's Law and its amendments to 23 Pa.C.S.A. §§ 5323 and 5328. ***See Id.*** at 8-14; Act of April 15, 2024, P.L. 24, No. 8. The discussion violates Rule of Appellate Procedure 2117(b), which prohibits argument in the Statement of the Case. Second, Mother has not divided her argument "into as many parts as there are questions to be argued," in contravention of Pa.R.A.P. 2119(a). Although her Statement of Questions Involved lists six questions, she divided her argument into three main sections with a total of eight subsections. The better practice is to divide the argument into sections (either main or subsections) bearing headings relating one-to-one to the issues listed in the Statement of Questions Involved. Despite the violations, we will not quash the appeal in

this instance because the errors are not so substantial that they hindered our appellate review. *See* Pa.R.A.P. 2101 (providing that if defects in the appellant's brief "are substantial, the appeal or other matter may be quashed or dismissed"); ***Int. of A.D.-G.***, 263 A.3d 21, 27 (Pa.Super. 2021).

We address Mother's issues together. Mother argues that the court violated 23 Pa.C.S.A. § 5323(e.1)(1) by ordering nonprofessional supervision of Father's custody without first finding that Father was "unable to pay" for professionally supervised visits. Mother's Br. at 42 (quoting 23 Pa.C.S.A. § 5323(e.1)(1)). She argues that neither the hearing officer's finding that professional supervision was "somewhat cost prohibitive" for Father, nor the court's finding that professional visitation would create a "substantial financial burden" for Father, satisfied the statutory "unable to pay" standard. Mother asserts we should apply the statutory language's plain meaning. ***Id.*** at 43-44.

Mother also asserts that the evidence would not have supported a finding that Father was unable to pay. She maintains that it was Father's burden to demonstrate his inability to pay, through the introduction of information such as his income and expenses. She points out that such information must be presented when a party's ability to pay is at issue in other family-law proceedings, such as in child support cases or applications to proceed *in formal pauperis*. Mother's Reply Br. at 17 (citing Pa.R.Civ.P. 240, 1910.16-2, and 1910.27).

Mother argues that here, Father failed to prove he was unable to pay for supervised visitation. She cites evidence of Father's income that was

submitted in relation to her motion to compel child support. Mother's Br. at 47-48. She points out that Paternal Grandmother testified that Father's parents pay his mortgage, taxes, and health insurance. *Id.* at 48 (citing N.T., 12/12/24, at 74). She also cites a 2023 contempt sanction of $10,000 a hearing officer levied against Father in the child support proceeding that the trial court upheld. *Id.* at 21 (citing Order, 12/12/23; N.T., 3/25/25, at 27-28, 32). She cites Father's argument that he cannot afford to pay for Happy Child supervision because he is supporting another child and is getting married. *Id.* at 49 (citing N.T., 7/18/25, at 159). She highlights that Father consistently paid for his visits at Arsenal without issue, and that his future costs for supervised custody will decrease because the court ordered Mother to start paying half. *Id.* at 49-51.

Father counters that the court did not need to use the "magic words" of "unable to pay," and he argues that the court clearly found he was unable to afford professionally supervised visitation. Father's Br. at 15-16. Father asserts that he is unable to pay because "[i]n order to utilize the time afforded to [him] in the current custody order, [he] would need to pay approximately $1,600 per month at the hourly rate of approximately $100 [per] hour imposed by Happy Child." *Id.* at 13-14. However, he does not provide any citations to record evidence supporting these figures. Father also argues that although the court ordered Mother to pay for half the cost of the visits, Father would in the end pay the full cost because Mother's half would be credited toward her child support arrears rather than paid to Father. *Id.* at 14. He

states he is a bricklayer and does not receive financial support from his parents. *Id.*

Mother argues that the order violates Section 5323(e.1)(2). She maintains that the statute requires the court to "[designate] an adult to supervise the custodial visits." Mother's Br. at 29 (quoting 23 Pa.C.S.A. § 5323(e.1)(2)). She argues that here, the court violated that provision by failing to designate a specific adult and instead ordering a "prospective process" by which a nonprofessional might begin supervising visits. *Id.* at 38.

Mother further contends that the court's "prospective process" does not comply with the other requirements of Section 5323(e.1)(2). First, she maintains, it does not require the prospective supervisor to appear before the court. *Id.* at 39, 41. Mother argues the statute requires the individual to appear in person to "[enable] the trial court in the first instance to assess the credibility of the putative adult supervisor." *Id.* at 41.

Mother argues the order also fails to require the prospective supervisor to execute an affidavit of accountability, as required by the statute. *Id.* at 39. Although the order requires the prospective supervisor to execute an "Acknowledgement of Accountability of Supervisor," which is a form used by Allegheny County, Mother contends that this is not a substitute for an affidavit. She points out that an "affidavit" is defined as a document "'sworn to or affirmed before an officer authorized by law to administer oaths,' or 'unsworn and contains a statement that it is made subject to the penalties of 18 Pa.C.S.

§ 4904.'" ***Id.*** at 39 (citing Pa.R.Civ.P. 76). She argues that the Allegheny County form "does neither." ***Id.*** at 40.

Finally, Mother argues the order fails to conform to the statute because it does not provide for the court to make an on-the-record finding "that the individual is capable of promoting the safety of the child." ***Id.*** at 39 (quoting 23 Pa.C.S.A. § 5323(e.1)(2)); ***see also id.*** at 40. Mother argues that although the order requires the prospective supervisor to "successfully [complete] a criminal background check," this does not meet the requirement of a record finding that the individual is capable of promoting the safety of Child. ***Id.*** at 40-41. Mother points out that the hearing officer ordered professional supervised custody after finding "a non-professional supervisor capable of promoting the safety of the child has not been identified[.]" ***Id.*** at 31 (quoting Report and Recommendation).

Mother relatedly argues the court's Rule 1925(a) opinion, implying that Paternal Grandmother may supervise Father's visits, does not cure the defects in the order. ***Id.*** at 31, 32-38. She contends even an order specifically designating Paternal Grandmother as a supervisor would fail to satisfy the statutory requirements because Paternal Grandmother had not executed an affidavit of accountability. She adds that the court also failed to make a record finding that Paternal Grandmother is capable of promoting the safety of Child, as the Rule 1925(a) opinion states only that Paternal Grandmother lacks a

criminal record, has not exhibited any conduct that she herself would harm Child, and has experience raising children. *Id.* at 36 (citing Trial Ct. Op.).[6]

Father responds that he "does agree" that the order "is incomplete with respect to the process outlined in Section 5323(e.1)(2)." Father's Br. at 18. Nonetheless, Father asserts that the defects have been cured by the trial court's identification of Paternal Grandmother in its Rule 1925(a) opinion; its finding in that opinion that she is capable of promoting the safety of the Child; and her subsequent filing of an Acknowledgment of Accountability. *Id.* at 10, 15, 16-18.

We review a custody order for an abuse of discretion. *Int. of K.N.L.*, 284 A.3d 121, 132-33 (Pa. 2022). Our scope of review is plenary and "of the broadest type." *Id.* (citation omitted). We must "defer to the trial judge regarding credibility and the weight of the evidence." *McGee v. McDowell*, 333 A.3d 383, 389 (Pa.Super. 2025). However, we "perform a comprehensive review of the record for assurance the findings and credibility determinations are completely supported." *Int. of K.N.L.*, 284 A.3d at 133. Furthermore, "[w]e are not bound by the trial court's deductions or inferences from [the] evidence." *T.M. v. H.M.*, 210 A.3d 283, 288 (Pa.Super. 2019). We may reject any conclusions drawn by the trial court if they "involve an error of law, or are

---

[6] Mother also asserts a finding that Paternal Grandmother is capable of promoting Child's safety would be unreasonable in light of the record evidence. Mother's Br. at 37. Mother additionally argues that Father failed to rebut the statute's preference for professional supervision. *Id.* at 52-62. As we find other issues require us to fully vacate the order, we will not address these arguments.

unreasonable in light of the sustainable findings of the trial court." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa.Super. 2013) (citation omitted).

Where the issue on appeal involves a challenge to the court's process or the interpretation and application of a statute, it raises a question of law. ***McGee***, 333 A.3d at 389; ***G.A.P. v. J.M.W.***, 194 A.3d 614, 616 (Pa.Super. 2018). Our standard of review over questions of law is *de novo*, and our scope of review is plenary. ***G.A.P.***, 194 A.3d at 616.

Mother's issues implicate the court's application of 23 Pa.C.S.A. § 5323(e.1). When interpreting a statute, the goal "is to ascertain and effectuate the intention of the General Assembly while construing the statute in a manner that gives effect to all its provisions." ***G.A.P.***, 194 A.3d at 616-17 (citing 1 Pa.C.S.A. § 1921(a)). "[T]he best indication of the General Assembly's intent may be found in a statute's plain language." ***Id.*** at 617 (citation omitted). "Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning." ***V.C. v. L.P.***, 179 A.3d 95, 97 (Pa.Super. 2018) (citation omitted).

In any custody award, the "paramount concern" is the best interests of the child. ***Pearson v. Pearson***, 353 A.3d 816, 822 (Pa.Super. 2026). The court conducting this analysis must consider the custody factors set forth in section 5328(a). ***See id.***; ***see also*** 23 Pa.C.S.A. § 5328(a) ("In ordering any form of custody, the court shall determine the best interest of the child"). It must afford "substantial weighted consideration" to those factors affecting the safety of the child, including past abuse or violent or assaultive behavior. 23

Pa.C.S.A. § 5328(a)(2), (2.2); *see Pearson*, 353 A.3d at 822-23. If the court determines there is a risk of harm to the child, the court may impose safety restrictions, such as professional or nonprofessional supervised physical custody. *See* 23 Pa.C.S.A. § 5323(e); *Pearson*, 353 A.3d at 823.

The Domestic Relations Code defines "supervised physical custody" as "[c]ustodial time during which an agency or an adult designated by the court or agreed upon by the parties monitors the interaction between the child and the individual with those rights." 23 Pa.C.S.A. § 5322(a). It defines "Professional supervised physical custody" as "[c]ustodial time during which a professional, with education and training on the dynamics of domestic violence, sexual assault, child abuse, trauma and the impact of domestic violence on children, oversees the interaction between the child and the individual with those custody rights and promotes the safety of the child during the interaction." *Id.*

Section § 5323(e.1) addresses supervised physical custody. It states in full:

> **(e.1) Supervised physical custody.--**If a court finds by a preponderance of the evidence that there is an ongoing risk of abuse of the child, there shall be a rebuttable presumption that the court shall only allow supervised physical custody between the child and the party who poses the risk of abuse. A court may find that an indicated report for physical or sexual abuse under Chapter 63 (relating to child protective services) is a basis for a finding of abuse under this subsection only after a de novo review of the circumstances leading to the indicated report. When awarding supervised physical custody under this subsection, the court shall favor professional supervised physical custody. The court may award nonprofessional supervised physical custody if:

> (1) the court determines that professional supervised physical custody is not available within a reasonable distance of the parties or the court determines that the party requiring supervised physical custody is unable to pay for the professional supervised physical custody; and
>
> (2) the court designates an adult to supervise the custodial visits who has appeared in person before the court, the individual executes an affidavit of accountability and the court makes [a] finding, on the record, that the individual is capable of promoting the safety of the child.

23 Pa.C.S.A. § 5323(e.1).[7]

According to its plain language, this subsection provides a rebuttable presumption that whenever there is an ongoing risk of abuse of the child, the court shall order supervised physical custody and shall favor professional supervised physical custody. *Id.* The court may only order nonprofessional supervised physical custody if both of two conditions are met:

(1) the court determines that the party requiring supervision is "unable to pay" for professional supervision, or there is no professional available within a reasonable distance of the parties, and

(2) the court designates a supervisor

> (a) who has appeared in person before the court,
>
> (b) who has executed an affidavit of accountability, and
>
> (c) whom the court has found, on the record, to be capable of promoting the safety of the child.

---

[7] This subsection took effect on August 13, 2024 – before the trial court entered its decision – as part of Kayden's Law. ***See generally Goldner on Behalf of K.M. v. Manigault***, 345 A.3d 1212, 1217 (Pa.Super. 2025). The parties and hearing officer discussed the enactment of Kayden's Law on the record. ***See, e.g.***, N.T., 7/18/25, at 151, 153-54.

*Id.* at § 5323(e.1)(1)-(2).

We find the court committed an error of law when, after finding an ongoing risk of abuse to Child – a finding Father does not contest – it awarded Father nonprofessional supervised physical custody without satisfying the requirements of Section 5323(e.1)(1) and (2).

First, the court failed to determine that Father was "unable to pay" for professional supervision, as required by 5323(e.1)(1). Although the court found that the cost of the professional supervised physical custody would create a "substantial financial burden that would operate as an impediment to his already limited periods of supervised custody," this is not the equivalent to a finding that Father is unable to pay the cost of professional supervision. Trial Ct. Op. at 4 (unpaginated).

Furthermore, insofar as the court's custody award implies that the court found Father was unable to pay for professional supervised physical custody, such a conclusion would not be supported by the record evidence. Father presented no evidence to substantiate the claim that he is unable to pay for professional supervision. Although he said that he was unable to pay, he did not state the amount of his income or expenses, or provide other evidence of either. Furthermore, there is no evidence regarding the cost of Happy Child, aside from the hearing officer's statement that the rate is $50 per hour. While Father contends that the rate is $100 per hour, and that he would need to pay approximately $400 per week for a four-hour visit through Happy Child, there is no testimonial or documentary evidence to support these figures. Moreover,

even assuming Father's suggested rate is correct, half of this amount would be applied towards Father's child support debt, making the true cost to Father $200 per week. While this is an increase from what Father was currently paying – $65 per week for a two-hour visit through Arsenal – there is simply insufficient evidence to support the court's conclusion that Father is unable to pay the difference. We therefore vacate the order and remand for the court to conduct such proceedings as it finds necessary to reconsider Father's ability to pay for professional supervision.

Second, the court erred in awarding physical custody supervised by a nonprofessional without adhering to the requirements of Section 5323(e.1)(2). The court was required to designate an individual who had appeared before the court and executed an affidavit of accountability, and whom the court had found to be capable of promoting the safety of Child. 23 Pa.C.S.A. § 5323(e.1)(2). Here, the court sanctioned Father's use of a nonprofessional supervisor without designating a specific individual. It also failed to require the individual to appear before the court or execute an affidavit of accountability, and did not find the candidate capable of promoting the safety of Child. The Acknowledgement of Accountability of Supervisor is inadequate as it does not meet the statutory requirement of an "affidavit." *See* 1 Pa.C.S.A. § 1991, "Affidavit." While the court's requirements that the individual be "competent," complete an Acknowledgment of Accountability of Supervisor at a future date, and successfully complete a criminal background

check may be helpful safeguards, they do not satisfy the statutory requirements.

In addition, the order contemplates Father's custody will shift from professional supervised custody to nonprofessional supervised custody at some undetermined future time, and without further consideration by the court. Yet, the statute's plain language requires the court to find that the requirements of Section 5323(e.1)(2) have been met before ordering nonprofessional supervised physical custody. The parties' conflicting ideas about whether Paternal Grandmother qualifies under the statute and may begin supervising visits demonstrates the need for the court to make the determination. We therefore vacate the order and remand for the court to conform to the statutory requirements.

Order vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 6/15/2026